In re BLAIR et al.

(Circuit Court of Appeals, Eighth Circuit.   January 14, 1901.)

No. 17.

BANKRUPTCY—REVISORY JURISDICTION—COURTS IN INDIAN TERRITORY.

Bankr. Act 1898, § 24b, which provides that "the several circuit courts of appeal shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction," confers such power only as to such inferior courts as were at the time of the passage of the act within their appellate jurisdiction; and the circuit court of appeals of the Eighth circuit has no revisory jurisdiction over the proceedings of the courts of bankruptcy in the Indian Territory, the court of appeals for the territory alone having appellate jurisdiction over such courts since its creation in 1895.[1]

Petition for Revision of Proceedings in the United States Court for the Northern District of the Indian Territory, in Bankruptcy.

William M. Mellette, Edgar Smith, and L. F. Parker, Jr., for petitioners.

James B. Burckhalter, for trustee, respondent.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

CALDWELL, Circuit Judge.   This is a petition filed by Samuel Carlin, Thomas F. McDonald, and Joseph A. Blair, composing the firm of Carlin, McDonald & Blair, to revise in matter of law the proceedings of the United States court sitting as a court of bankruptcy for the Northern district of the Indian Territory in the matter of the bankruptcy of Nelson Moore, wherein that court adjudged the petitioners guilty of contempt.   The jurisdiction of this court to entertain this petition for review is challenged.   It is necessary to a correct understanding of this question to ascertain the precise relation this court sustained to the Indian Territory and its courts at the date of the passage of the bankrupt act.   The first act establishing a United States court for the Indian Territory was passed March 1, 1889 (25 Stat. 783), two years before the passage of the act creating the United States circuit courts of appeals.   Under the act of 1889 there was but one judge for the Indian Territory, and the act provided that:

"The final judgment or decree of the court hereby established, in cases where the value of the matter in dispute, exclusive of costs, to be ascertained by the oath of either party or of other competent witnesses, exceeds one thousand dollars may be reviewed and reversed or affirmed in the supreme

---

[1] Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

court of the United States upon writ of error or appeal, in the same manner and under the same regulations as the final judgments and decrees of a circuit court."

The act creating United States circuit courts of appeals was passed March 3, 1891, and contained this provision:

"Section 13. Appeals and writs of error may be taken and prosecuted from the decisions of the United States court in the Indian Territory to the supreme court of the United States, or to the circuit court of appeals in the Eighth circuit, in the same manner and under the same regulations as from the circuit or district courts of the United States, under this act."

The appellate jurisdiction conferred on this court, by the provision last quoted, over the United States court of original jurisdiction in the Indian Territory, continued until the passage of the act of March 1, 1895 (28 Stat. 693). That act divided the territory into three judicial districts and gave it a judicial system modeled after that commonly adopted by congress for the territories. The act provided for the appointment of two additional judges. This gave the territory three judges, who were constituted a court of appeals for the territory; and the act declares that such appellate court "shall have such jurisdiction and powers in said Indian Territory and such general superintending control over the courts thereof as is conferred upon the supreme court of Arkansas over the courts thereof by the laws of said state, as provided by chapter forty of Mansfield's Digest of the Laws of Arkansas, and the provisions of said chapter, so far as they relate to the jurisdiction and powers of said supreme court of Arkansas as to appeals and writs of error, and as to the trial and decision of causes, so far as they are applicable, shall be, and they are hereby, extended over and put in force in the Indian Territory." Among the powers conferred on the supreme court by chapter 40 of Mansfield's Digest, which, by the terms of the foregoing provision, are conferred on the court of appeals for the Indian Territory, are the following:

"The supreme court * * * shall have a general superintending control over all inferior courts of law and equity; and, in aid of its appellate and supervisory jurisdiction, it shall have power to issue writs of error, and supersedeas, certiorari, habeas corpus, prohibition, mandamus, and quo warranto, and other remedial writs; and to hear and determine the same."

The supreme court is further given appellate jurisdiction over "final orders, judgments, and determinations of all inferior courts of the state." It will be seen that by the provisions of the act of 1895 the appellate jurisdiction over the judgments and decrees of the United States courts of original jurisdiction in the Indian Territory was vested in the court of appeals of the territory, and thereupon the appellate jurisdiction of this court, under section 13 of the act organizing this court, over the judgments and decrees of the United States court in the Indian Territory exercising original jurisdiction, ceased. The act creating the court of appeals for the Indian Territory contained this further provision:

"Writs of error and appeals from the final decision of said appellate court shall be allowed, and may be taken to the circuit court of appeals for the Eighth judicial circuit in the same manner and under the same regulations as appeals are taken from the circuit courts of the United States."

The appellate jurisdiction conferred on this court by this provision of the act is the only jurisdiction this court could exercise over any court in this territory at the date of the passage of the bankrupt act. It had no appellate jurisdiction or supervisory or revising control over the courts of original jurisdiction in the territory, but appellate jurisdiction over the court of appeals of the territory only.

Before the bankrupt act was passed, the court of appeals for the territory had been vested with appellate jurisdiction over the United States courts of original jurisdiction in the territory in the broadest and most comprehensive terms. It had been granted and possessed all the jurisdiction and powers over inferior courts within the territory that are ever conferred on an appellate court. Section 15 of the act creating the United States circuit courts of appeals provides:

"That the circuit courts of appeals in cases in which the judgments of the circuit courts of appeal are made final by this act shall have the same appellate jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the supreme courts of the several territories as by this act they may have to review the judgments, orders, and decrees of the district court and circuit courts, and for that purpose the several territories shall, by orders of the supreme court, to be made from time to time, be assigned to particular circuits."

Under the power conferred by this section the supreme court passed the following order:

"Ordered, that, under section 15 of the act approved March 3, 1891, entitled 'An act to establish circuit courts of appeals, and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes,' the territories of Alaska and Arizona are assigned to the Ninth judicial circuit, and the territories of New Mexico, Oklahoma, and Utah are assigned to the Eighth judicial circuit." 139 U. S. 707, 11 Sup. Ct. iv.

It will be observed that the Indian Territory is not mentioned among the territories assigned to the Eighth judicial circuit. There is no subsequent order making such an assignment, and the acts of congress will be searched in vain for a provision assigning that territory to this circuit, or making it a part thereof, or giving to this court any jurisdiction or authority whatever over that territory or its courts, save only appellate jurisdiction over its court of appeals,—a jurisdiction which is possessed equally by the supreme court of the United States.

Coming now to the bankrupt act, we find the twenty-fourth section of that act invests "the supreme courts of the territories with appellate jurisdiction of controversies arising in bankruptcy proceedings over the courts of bankruptcy from which they have appellate jurisdiction in other cases." We have seen that the supreme court of the Indian Territory is invested with exclusive appellate jurisdiction, in the first instance, of all cases arising in the United States courts of original jurisdiction in that territory, and is, therefore, by the very terms of this section, "invested with appellate jurisdiction of controversies arising in bankruptcy proceedings" in those courts. But the provision of the act relied upon by the petitioners to maintain the jurisdiction of this court is subdivision "b" of section 24, which reads as follows:

"(b) The several circuit courts of appeal shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law the

proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised on due notice and petition by any party aggrieved."

The power conferred on the circuit courts of appeals by this provision is to superintend and revise proceedings of the inferior courts of bankruptcy "within their jurisdiction"; that is, the bankrupt court must be within the jurisdiction of the United States circuit courts of appeals before these courts can superintend or revise the proceedings of the former. The phrase "within their jurisdiction" has reference to an existing jurisdiction, and an existing appellate jurisdiction, and is to be construed the same as if it read "within their appellate jurisdiction"; in other words, the phrase "within their jurisdiction" means jurisdiction over courts from which appeals lie to the United States circuit courts of appeals. It does not bring within the jurisdiction of the United States circuit courts of appeals the proceedings of courts of bankruptcy unless those courts were then within the jurisdiction of the circuit courts of appeals. Though the mode of bringing before the appellate court for review the proceedings of a bankrupt court under subdivision "b" differs in form from an appeal or writ of error in an ordinary action, including appeals and writs of error in actions and suits in the bankrupt court, it is in fact and substance an appeal from the judgment or order complained of. It seeks a revision, a correction, a reversal of the judgment or order complained of, and necessarily calls into exercise the same powers of review of the appellate court which belong to it, and which it exercises in all other cases of appeal from courts over which it is invested with appellate jurisdiction. It is an appellate proceeding before an appellate court, and the bankrupt act contemplates that it shall be brought before the same appellate court that exercises appellate jurisdiction in all other cases over the court whose judgment or order in a bankruptcy proceeding is sought to be revised. It is a mode of proceeding adopted to expedite the review of the proceedings of the bankrupt court. The dividing line between the judgments and orders of the bankrupt court which can be reviewed by appeal or writ of error only and those which may be reviewed by petition for review is somewhat obscure and shadowy, and all the authorities agree in holding that the jurisdiction in the latter case is appellate, and that the court to whom the petition for review is addressed sustains the relation of an appellate court to the court whose judgment or order it is sought to have reviewed. In re Jacobs, 39 C. C. A. 647, 99 Fed. 539.

The first section of the bankrupt act defining the meaning of words and phrases in the act declares: "'Courts of bankruptcy' shall include * * * the United States court of the Indian Territory, * * *" and "'appellate courts' shall include the circuit courts of appeal of the United States, the supreme courts of the territories and the supreme court of the United States," and "'states' shall include * * * the Indian Territory. * * *" Under these provisions the United States courts of original jurisdiction in the Indian Territory are undoubtedly inferior courts of bankruptcy, within the meaning of these words in subdivision "b," but they are not within the jurisdiction, either territorial or appellate, of the United States

circuit court of appeals for the Eighth judicial circuit. It is inconceivable that congress would invest the United States court of appeals in the Indian Territory with the broadest and amplest appellate and supervisory jurisdiction over the judgments, decrees, and orders of the United States courts in the territory in all civil cases, including the judgments, orders, and decrees of those courts in bankruptcy cases, and deny to it jurisdiction to revise the proceedings in bankruptcy of those same courts, and invest that restricted and inferior appellate jurisdiction in the United States circuit court of appeals located far from the territory, and which is invested with no sort of appellate jurisdiction over those courts. No reason can be suggested why the customary scheme observed in the organization of the judicial system for that territory, namely, courts of original jurisdiction and an appellate court invested with appellate jurisdiction over the courts of original jurisdiction in all cases, should be broken into in such an unreasonable and unaccountable manner. Before a court could hold that it was the intention of congress to do this, that intention would have to be expressed in clear and unambiguous language. The petition to revise proceedings in bankruptcy being, as we have shown, in its very nature, an appellate proceeding, the provision of section 24, which invests "the supreme courts of the territories with appellate jurisdiction of controversies arising in bankruptcy proceedings from the courts of bankruptcy from which they have appellate jurisdiction in other cases," is adequate to invest the supreme courts of the territories with the superintending and revisory jurisdiction spoken of in subdivision "b." The petition is dismissed for want of jurisdiction.